## UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

**WOMETCO PR DE PUERTO RICO, INC.,**

    **Plaintiff,**

**v.**

    **CASE NO. 14-CV-1172 (CCC)**

**BASKIN-ROBBINS FRANCHISING LLC, DUNKIN' DONUTS FRANCHISED RESTAURANTS LLC, DD IP HOLDER LLC, and John Does A-Z**

    **Defendants.**

### PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION TO ENJOIN DEFENDANTS DUNKIN' DONUTS FRANCHISED RESTAURANTS LLC AND DD IP HOLDER, LLC FROM ARBITRATING AGAINST WOMETCO PR

TO THE HONORABLE COURT:

Pursuant to Section 4 of the Federal Arbitration Act, 9 U.S.C. § 4, Plaintiff WOMETCO DE PUERTO RICO, INC. ("Wometco PR") hereby requests an order to stay an arbitration commenced against Wometco PR.

### I. PRELIMINARY STATEMENT

It is well-established in this circuit that federal courts have the power to enjoin arbitration under Section 4 of the Federal Arbitration Act, 9 U.S.C. §§ 2 *et seq.* (the "FAA"). *PCS 2000 LP v. Romulus Telecomm., Inc.,* 148 F.3d 32, 35 (1st Cir. 1998) ("the power to enjoin an arbitration is 'the concomitant of the power to compel arbitration,' and thus the same provision of the FAA [Section 4] authorizes both types of orders") (citing *Société Générale de Surveillance, S.A. v. Raytheon European Mgmt. & Sys. Co.,* 643 F.2d 863, 868 (1st Cir. 1981)). Through this Motion, Wometco PR seeks a preliminary injunction to enjoin defendants Dunkin' Donuts Franchised Restaurants LLC ("DD LLC") and DD IP Holder, LLC ("DD IP") from arbitrating against

Wometco PR because (a) there is no binding agreement to arbitrate or (b) at the very least, there exists a controversy of fact regarding the existence of the agreement, thus requiring a jury trial under the FAA.

Indeed, denying the injunctive relief requested would be contrary to the very purpose of the FAA to make arbitration agreements "as enforceable as other contracts, but not more so." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 404 n.12 (1967). More importantly, denying the preliminary injunction would result in irreparable harm to Wometco PR by preventing Wometco PR from exercising its statutory rights under the FAA as well as the rights all litigants enjoy in a judicial process, including the constitutional right to a jury trial and the right to seek appellate review of adverse dispositions. Thus, the Court should grant this motion.

## II.  RELEVANT FACTS

### A.  The Players

1.     Plaintiff Wometco PR is a Puerto Rico corporation that, for more than 12 years, has been the sole distributor of Dunkin' Donuts in the Puerto Rico market. Declaration of Michael S. Brown ("Brown Decl. I") (Mar. 19, 2014) ¶ 2, attached hereto as Exhibit A. Wometco PR is also the sole distributor of Baskin-Robbins products in the Puerto Rico market and has been so for almost four decades. *Id.* Wometco PR's only business is the sale of Dunkin' Donuts and Baskin-Robbins products in Puerto Rico, employing approximately 500 employees. *Id.*

2.     Non-Party Wometco Donas is a Puerto Rico corporation that is engaged in the business of manufacturing donuts, which, in relevant part, it sells to Wometco PR. *Id.* ¶ 3. Wometco Donas is not involved in the operation of Wometco PR's stores or the development of

the market for Dunkin' Donuts products. *Id.*[1]

3.      Defendant DD LLC, on its behalf and/or on behalf of its affiliated entities, engages independent business entities such as Wometco PR to develop, operate and expand the market for Dunkin' Donuts products worldwide. Defendant DD IP is the owner of the "Dunkin' Donuts" trademark and other related marks (the "Marks"). Certificate of Jack Laudermilk (Mar. 5, 2014) ¶ 4, attached hereto as Exhibit B. DD LLC and DD IP are herein collectively referred to as "Dunkin'."

4.      Defendant Baskin-Robbins Franchising LLC ("B-R LLC"), on its behalf and/or on behalf of its affiliated entities, engages independent business entities such as Wometco PR to develop, operate and expand the market for Baskin-Robbins products. Upon information and belief, B-R LLC is affiliated with DD LLC and DD IP (Dunkin' and B-R LLC are hereinafter collectively referred to as the "Defendants").

**B. Wometco PR Becomes the Exclusive Dealer for Baskin-Robbins and Dunkin' Donuts Products in Puerto Rico**

5.      Wometco PR has been the *de facto* exclusive dealer of Baskin-Robbins products in Puerto Rico for over 37 years. Brown Decl. I ¶ 9. During that time, Wometco PR has continuously operated all of the Baskin-Robbins stores in Puerto Rico, developing and expanding a successful market for Baskin-Robbins' products on the island. *Id.*[2]

6.      Some time before 2001 (over 13 years ago), individuals affiliated with Dunkin' approached Wometco PR to offer it the Puerto Rico dealership of Dunkin' Donuts products. *Id.* ¶

---

[1] Although Wometco Donas is affiliated to Wometco PR, each of these entities was incorporated under Puerto Rico law and is an independent legal person as a matter of law. P.R. Laws Ann. tit. 14, § 3505 (a corporation becomes a legal person once it is incorporated). That they may share the same officers in no way changes this legal reality.

[2] On or about November 1, 2009, Wometco PR and B-R LLC executed a "Master Franchise and Development Agreement." The "Master Franchise and Development Agreement," as amended, is hereinafter referred to as the "B-R Agreement" and is attached as Exhibit C.

10. Per these individuals, one of the principal reasons for the offer was Wometco PR's success in developing the Baskin-Robbins market in Puerto Rico. *Id.*

7.    Wometco PR accepted the offer and, since 2001, has been effectively and actually in charge of the Dunkin' Donuts market in Puerto Rico in an exclusive fashion.[3] *Id.* ¶ 11. This is the _only_ Law 75 distribution relationship that has been in place with Dunkin' in connection with the sale of Dunkin' Donuts products in Puerto Rico.  However, Wometco PR *never* entered into a written agreement governing the operation of the Dunkin' Donuts market in Puerto Rico. *Id.* ¶ 12.

8.    And, even though *Wometco Donas* entered into a written agreement with Dunkin' in 2001 for the development and operation of Dunkin' Donuts stores *by Wometco Donas* in Puerto Rico (the "Wometco Donas Agreement"), that agreement was never *followed and/or enforced by anyone, including Wometco Donas and Dunkin'.   Id.* ¶ 4.[4]  Indeed, as Dunkin' well knows, to date Wometco Donas has never developed or operated a Dunkin' Donuts store in Puerto Rico nor has it sold a single Dunkin' Donuts product in the Puerto Rico retail market. *Id.* ¶ 16.

9.    As Dunkin' also knows, *Wometco PR* has uninterruptedly operated each and every one of the Dunkin' Donuts stores in Puerto Rico and exclusively sold Dunkin' Donuts products to

---

[3] Initially, Wometco PR's dealership of Dunkin' Donuts products was not exclusive, as there was at the time another Dunkin' Donuts dealer with a 3-store operation in Puerto Rico. However, by the end of 2003, Wometco PR effectively became the exclusive Dunkin' Donuts dealer in the territory. Since then, Wometco PR has substantially expanded the market and goodwill of the Dunkin' Donuts products in Puerto Rico. Brown Decl. I ¶ 11.

[4] Importantly, Wometco PR did not sign the Wometco Donas Agreement nor is it referred to or defined therein as a party to that agreement.  Wometco PR simply executed a Guarantee with Dunkin', by virtue of which it guaranteed the performance by Wometco Donas of its obligations and performance under the Wometco Donas Agreement. Brown Decl. I ¶ 8 & Ex. 2 thereto ¶ 1. However, to the extent that the Wometco Donas Agreement was never enforced and was superseded by a course of business between Wometco PR and Dunkin', *see Welch Food, Inc.,* 13 F.3d at 482-83, there is no obligation or performance by Wometco Donas to guarantee.

the Puerto Rico consumer since 2001.  *Id.* ¶¶ 2, 11; Declaration of Michael S. Brown ("Brown Decl. II") (Mar. 27, 2014) ¶ 2, attached hereto as Exhibit D.  In fact, a letter issued by the Director of International Operations-America for Dunkin' Donuts International clearly discusses Wometco PR's use of Dunkin' Donuts "logo and trade dress" at one of Wometco PR's combo stores in Puerto Rico.  Brown Decl. II ¶ 4 & Ex. B thereto.

10.    Wometco PR is currently operating all of the 45 Baskin-Robbins stores in Puerto Rico and has one under construction, which would bring the total to 46 stores by mid-2014. Brown Decl. I, ¶ 13. Of these 45 stores, 18 are what Dunkin' calls "Combo Units" because each of them sells Dunkin' Donuts and Baskin-Robbins products together. *Id.* ¶ 13.

11.    Wometco Donas has never been the lessee or tenant for any of the properties that are being used by Wometco PR to operate the 18 Combo Units.  Brown Decl. II ¶ 3 & Ex. A thereto; *see also* Ex. B ¶ 3 ("As Associate General Counsel, ***I am the custodian of*** and ***have access to*** executed copies of all Dunkin' franchise agreements, ***leases***, correspondence, and other related documents and records concerning each Dunkin' franchise." (emphasis added)).

## C. The Defendants Collude To Violate Wometco PR's Rights Under the Puerto Rico Dealer's Act, P.R. Laws Ann. tit. 10, §§ 278 *et seq.* ("Law 75")

12.    Since 2006, Puerto Rico has been in an economic recession that has affected the Puerto Rican economy across the board, without showing any signs of improvement. Brown Decl. I, ¶ 20. The recession has seriously affected retail sales on the island, and the Baskin-Robbins stores and Combo Units in Puerto Rico have not been immune to this economic downturn. *Id.*

13.    Despite being aware of this economic reality, the Defendants and others have colluded and taken steps that are in violation of Law 75 and intended to cause significant and irreparable damage to Wometco PR and its approximate 500 employees. Based on recent developments, it has become obvious that the Defendants and others have orchestrated a scheme

5

to destroy Wometco PR's four-decade operation on the island and put at serious risk the livelihood of Wometco PR's employees. *See id.* ¶¶ 22-24.

14.     As part of this concerted scheme, in January 2014, Dunkin' sought to unlawfully terminate Wometco PR's Dunkin' Donuts dealership, demanding, among other things, that Wometco PR cease selling Dunkin' Donuts products and using the Dunkin' Donuts Marks in commerce. *Id.* at 22.

15.     As a mere pretext for such termination, Dunkin' alleged (*albeit incorrectly*) a breach of the never-followed, inapplicable and abandoned Wometco Donas Agreement. *See* Complaint (D.E. 1), case no. 1:14-cv-10162-NMG (D. Mass.).

16.     The Dunkin' Parties' scheme also included the implementation of a strategy to significantly impair Wometco PR's dealership of Baskin-Robbins products. As Dunkin' is well aware, the survival of the Combo Units, and indeed of the entire Baskin-Robbins operation by Wometco PR, is now threatened as a direct result of Dunkin's' willful and ill-intended efforts to interfere with Wometco PR's ability to sell Dunkin' Donuts products in the Combo Units. *Id.* ¶ 23.

**D.  Dunkin' Improperly Commences Arbitration Proceedings Against Wometco PR**

17.     Also as part of the scheme, and based on the alleged breach of the Wometco Donas Agreement, DD LLC and DD IP commenced arbitration proceedings against Wometco PR and Wometco Donas. (the "Arbitration"). *See* Demand for Arbitration, attached as Exhibit E.

18.     However, *Wometco PR* has never agreed to arbitrate any issue with DD LLC or DD IP, much less entered into any arbitration agreement with these Defendants. *See* Brown Decl. I, Ex. 1 thereto, § 19. The only arbitration agreement that Wometco PR has entered into is with *Baskin-Robbins* as part of the *B-R Agreement*, and Baskin Robbins is *not* a claimant in the

Demand for Arbitration.[5]  *See* Ex. C § 15.1; Ex. E.

### III. DISCUSSION

**A.  Standard for Motion for Preliminary Injunction to Enjoin Arbitration**

Under general principles of federal law, in order to determine whether to issue a preliminary injunction, a district court must assess the following four elements: "(1) the likelihood of success on the merits; (2) the potential for irreparable harm if the injunction is denied; (3) the balance of relevant impositions, *i.e.,* the hardship to the nonmovant if enjoined as contrasted with the hardship to the movant if no injunction issues; and (4) the effect (if any) of the court's ruling on the public interest." *Charlesbank Equity Fund II v. Blinds to Go, Inc.,* 370 F.3d 151, 162 (1st Cir. 2004).

**B.  Analysis of the Elements for a Preliminary Injunction**

***1. Wometco PR is Likely to Succeed on the Merits (Question of Arbitrability)***

    a.  <u>Under the FAA and Law 75, Wometco PR May Not Be Forced to Arbitrate Until *After* the Court Decides the Question of Arbitrability, Which Must be Submitted to a Jury Trial if there are Issues of Fact Regarding the Existence of a Binding Agreement to Arbitrate</u>

Under the FAA, "a gateway dispute about whether the parties are bound by a given arbitration clause raises a 'question of arbitrability' for a court to decide." *Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79, 84 (2002); *see also John Wiley & Sons, Inc.* v. *Livingston*, 376 U.S. 543, 546-547 (1964) (it is for the court to determine whether a corporation who did not sign an agreement containing an arbitration provision is bound to arbitrate).

The gateway "question of arbitrability" also includes "whether the arbitration clause in a concededly binding contract applies to a particular type of controversy." *Howsam,* 537 U.S. at

---

[5] There can be no dispute that Wometco PR's claims in this action against Baskin Robbins are properly before this court because the arbitration provision in the B-R Agreement provides that the party filing suit may elect whether to submit a dispute to arbitration or to the court system and that such election is binding on the parties.  Ex. C § 15.1.

84. After all, the FAA was designed "to make arbitration agreements as enforceable as other contracts, but not more so." *Prima Paint,* 388 U.S. at 404 n.12; *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943-944 (1995) ("arbitration is simply a matter of contract between the parties"). Thus, "the FAA does not require parties to arbitrate when they have not agreed to do so …. It simply requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms." *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University*, 489 U.S. 468, 478 (1989) (internal citations omitted).

Law 75 is fully consistent with these principles of federal arbitration law. Specifically, the statute provides that, before an agreement to arbitrate a controversy arising under a dealer's contract "may be invoked or made effective, it shall be an indispensable requirement before said controversy may be submitted to arbitration, at the request of any of the parties, that a court with jurisdiction in Puerto Rico determine that said clause or arbitration agreement was subscribed freely and voluntarily by both parties" (*i.e.,* that the parties consented to arbitration). P.R. Laws Ann. tit. 10, § 278b-3. That means that, under Law 75, a dealer (or principal) cannot be forced to arbitrate until a court of law in Puerto Rico has determined whether the parties agreed to arbitrate.[6]

Moreover, under the FAA, when factual controversy exists regarding gateway issue of arbitrability, the question must be decided by jury trial:

> *If the making of the arbitration agreement . . . be in issue, the court shall proceed summarily to the trial thereof. . . . Where such an issue is raised, the party alleged to be in default may, except in cases of admiralty, on or before the return day of the notice of application, demand a jury trial of such issue, and upon such demand*

---

[6] The FAA does not preempt procedural state law where state law does not conflict with the objectives of the FAA to promote arbitration pursuant to the parties' agreement. *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University*, 489 U.S. 468, 477-78 (1989). Requiring the parties to litigate the threshold question of arbitrability in a Puerto Rico court (a question which is nevertheless for the courts to decide per U.S. Supreme Court precedent) in no way affects the objectives of the FAA.

> *the court shall make an order referring the issue or issues to a jury in the manner*
> *provided by the Federal Rules of Civil Procedure . . . .*

9 U.S.C. § 4 (emphasis added).

This is precisely what happened in *Great Am. Trading Corp. v. I.C.P. Cocoa, Inc.*, 629 F.2d 1282, 1288 (7th Cir. 1980), where the defendant filed a motion to compel arbitration. The plaintiff opposed the request, contending that the contract providing for arbitration had been superseded by a subsequent agreement and that there was consequently no valid or enforceable agreement to arbitrate. *Id.* at 1285. Rejecting the plaintiff's argument, the district court granted the motion to compel and directed the arbitration to proceed. *Id.* The arbitration board ultimately entered judgment in favor of the defendant and the award was confirmed by the district court. *Id.* On appeal, the plaintiff argued that the final judgment was void because it was entered without affording the plaintiff an evidentiary trial on the issue of arbitrability as provided for under Section 4 of the FAA. *Id.* at 1286. The appellate court agreed, remanding the matter for a trial on the issue. *Id.* at 1287-89.

Applying these principles to the case at hand, the arbitration proceeding commenced by Dunkin' against Wometco PR *may not proceed* until this Court decides the question of arbitrability and, to the extent there is an issue of fact, such arbitration may not proceed until the question has been decided by jury trial.

b. Wometco PR's Relationship With Dunkin' And the Dunkin' Dealership in Puerto Rico is Governed by a Law 75 Dealer's Contract Established by a Course of Dealing

Law 75 defines a "dealer's contract" as the

[r]elationship established between a dealer and a principal . . . whereby and *irrespectively of the manner in which the parties may call, characterize or execute such relationship,* the former *actually and effectively* takes charge of the distribution of a merchandise, or of the rendering of a service, by concession or franchise, on the market of Puerto Rico.

P.R. Laws Ann. tit. 10, §§ 278a. As the First Circuit court has explained, this definition incorporates "*any* arrangement" between a principal and a dealer and, "once the relationship is established, the statute applies . . . and it explicitly rejects any efforts by the parties to foreclose coverage through semantic niceties." *RW Int'l Corp. v. Welch Food, Inc.,* 13 F.3d 478, 482-83 (1st Cir. 1994). The First Circuit has also noted that it could not "be said that a relationship is established within the meaning of Law 75 only if it is committed to writing. . . . [A] relationship subject to the statute may be established through a course of dealing." *Id.*

Pursuant to the evidence submitted with this motion (which will be supplemented at the jury trial to which Wometco PR is entitled on the issue of arbitrability), Wometco PR and Dunkin' established a dealer's contract through a course of dealing that has taken place for over a decade. Brown Decl. I, ¶¶ 2, 10-19; Brown Decl. II, ¶¶ 2-4 and exhibits thereto. Purely as a matter of fact, that dealer's contract is the only contract or relationship that has been put into effect between Dunkin' and anyone in connection with the sale of Dunkin' Donuts products in Puerto Rico. *See id.* Significantly, the dealer's contract between Dunkin' and Wometco PR lacks an agreement to arbitrate.

c. There is No Agreement to Arbitrate With Wometco PR

In the words of the First Circuit Court of Appeals, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *McCarthy v. Azure*, 22 F.3d 351, 354-355 (1st Cir. 1994) (quoting *AT & T Tech., Inc. v. Comm. Workers,* 475 U.S. 643, 648 (1986)) (citations omitted). [R]equiring that arbitration rest on a consensual foundation is wholly consistent with federal policy." *Id.* (citations omitted).

Here, there exists no arbitration agreement between Wometco PR and Dunkin'. Although there is a written agreement between *Wometco Donas* and Dunkin' that contains an agreement to arbitrate certain (not all) disputes "between the parties [to the Wometco Donas Agreement],"

Wometco PR did not sign the Wometco Donas Agreement nor is it referred to or defined therein as a party to that agreement.[7] Brown Decl. I, ¶ 4 & Ex. 1 thereto, § 19. Moreover, Wometco PR has never expressed consent to be bound to either the Wometco Donas Agreement or any agreement to arbitrate with Dunkin', for that matter.[8]

    d.  <u>Wometco PR Cannot Be Forced to Arbitrate under the Guarantee</u>

       In its motion to dismiss, Dunkin' suggests that Wometco PR is bound to the terms of the arbitration agreement in the Wometco Donas Agreement because the entire agreement was incorporated by reference into the Guarantee that was executed by Wometco PR. D.E. 16 at 27. However, per its own terms, the purpose of the Guarantee was a limited one: to guarantee the "full *payment* and *performance*" by Wometco Donas of its obligations under the Wometco Donas Agreement. Brown Decl. I ¶ 8 & Ex. 2 thereto ¶ 1 (emphasis added). And, the evidence regarding the conduct of the parties shows that the Agreement was never put into effect and was in fact abandoned[9] and superseded by the dealer's contract established between Dunkin' and

---

[7] Indeed, the arbitration agreement does not contain the usual broad language submitting to arbitration all disputes "arising under or relating to" the Wometco Donas Agreement. Instead, it is a narrow clause limited to disputes "between the parties hereto [*i.e.,* the parties to the Wometco Donas Agreement]." Brown Decl. I, Ex. 1 thereto, § 19. Because Wometco PR is not a party to that agreement, the scope of any dispute with Wometco PR falls outside the scope of the arbitration agreement. *Cummings v. FedEx Ground Package System, Inc.*, 404 F.3d 1258, 1262 (10th Cir. 2005) ("Under a narrow arbitration clause, a dispute is subject to arbitration only if it relates to an issue that is on its face within the purview of the clause, and collateral matters will generally be beyond its purview").

[8] As previously noted, the only arbitration agreement to which Wometco PR has consented is the agreement in the B-R Agreement; Wometco PR was actually a party to that Agreement. *See* Ex. C. Nevertheless, as stated before, Wometco PR's claims against Baskin Robbins in this action are properly before the Court because, under the arbitration provision in the B-R Agreement, the party filing suit is entitled to elect whether to submit the dispute to arbitration or the court system. *See id*. § 15.1. As the plaintiff in this action, Wometco PR elected to file its claims against Baskin Robbins with the Court.

[9] The Wometco Donas Agreement contains a choice of law provision designating Massachusetts law as applicable. Assuming (without conceding) that the choice of law provision is valid, under Massachusetts law, a bilateral contract may be abandoned or canceled by mutual consent of the parties by either a new agreement or by the consent to abrogate, so that both will be discharged

*Wometco PR.* Brown Decl. I ¶¶ 4, 6, 10-19; Brown Decl. II ¶¶2-4.[10]   Therefore, because the Wometco Donas Agreement is not in existence or enforceable, there is nothing—most importantly, no arbitration provision—to incorporate by reference into the Guarantee.

Moreover, contrary to what Dunkin' contends, the Guarantee did not contain language that expressly or impliedly suggested that Wometco PR was incorporating by reference the entire Wometco Donas Agreement. Quite the contrary, the Guarantee was clear in making sure that the Guarantee remained as an independent contract by expressly stating that ***WPR "shall have no rights" under the Wometco Donas Agreement***.[11] Brown Decl. I, Ex. 2 thereto ¶ 5 (emphasis added).  Of significance, Dunkin' admits that it "named Wometco PR in the Arbitration Action based on its capacity as guarantor of the [Wometco Donas Agreement], not on its alleged… capacity as a dealer." D.E. 16 at 26.

Even assuming that both the Wometco Donas Agreement and the Guarantee are enforceable, Wometco PR's liability as guarantor regarding the duty to arbitrate has not accrued

---

from performance. *Hanson & Parker v. Wittenberg*, 91 N.E. 383, 384 (Mass. 1910). "A contract may be abandoned by conduct as well as by words." *Mark v. Stuart-Howland Co.*, 115 N.E. 42, 44 (Mass. 1917). Whether parties to a contract have assented to the abandonment or cancellation of the contract is a question of fact; *id.*; something that "may be inferred from the attendant circumstances and conduct of the parties." *Puma v. Gordon,* 402 N.E.2d 110, 115 (Mass. App. 1980).

[10] The evidence submitted with this Motion supports the finding that the contract was abandoned. ***At the very least, it creates a controversy of fact that would need to be decided at trial.***

[11] In *Awuah v. Coverall N. Am., Inc.*, 703 F.3d 36, 43 (1st Cir. 2012), the First Circuit noted that, "[u]nder Massachusetts law, 'the language used in a contract to incorporate extrinsic material by reference ... must clearly communicate that the purpose of the reference is to incorporate the referenced material into the contract.'" (citations omitted). There is no such clear communication in the Guarantee. Further, the case is inapposite because the written contracts containing the arbitration clauses at issue were in fact *transferred* to the party who opposed arbitration and those contracts expressly provided that the transferees would "succeed to all of Franchisee's rights and obligations." Moreover, the guarantee in that case referred to the transferees as the "Franchisee." Therefore, the transferees actually and expressly "succeeded" the party to the arbitration agreements as to all "*rights* and obligations." (emphasis added). Here, however, the Guarantee provided that Wometco PR had "no rights" under the Wometco Donas Agreement, thereby confirming that Wometco PR was purely a guarantor. *See* Brown Decl. I, Ex. 2 thereto ¶ 5.

because Wometco Donas has not refused to arbitrate. *Black's Law Dictionary* at 705 (6th ed. 1990) (the purpose of a guarantee is "to bind the guarantor to performance in event of nonperformance by the principal obligor");[12] *see also Federal Deposit Ins. Corp. v. Barrera*, 595 F. Supp. 894, 900 (D.P.R. 1984) (the purpose of a guarantee is to insure the fulfillment of a contract). Indeed, Dunkin' cannot allege that Wometco Donas has failed to perform under the arbitration agreement. Thus, even assuming *arguendo* that the arbitration agreement applies to Wometco PR, no arbitrable dispute has accrued.

Finally, the legal nature of arbitration agreements also prevents a finding that the Guarantee somehow incorporated the agreement to arbitrate from the Wometco Donas Agreement. As stated by the First Circuit, arbitration agreements are bilateral contracts with independent mutual consideration. *Soto-Fonalledas v. Ritz-Carlton San Juan Hotel Spa & Casino*, 640 F.3d 471, 475 (1st Cir. 2011) ("implicit in the arbitration agreement [are] bilateral obligations. Both parties are required to arbitrate . . . which constitutes independent mutual consideration"). That means that both parties thereto have the obligation to arbitrate and the concomitant right to compel compliance of that obligation by the other party. Because, per the terms of the Guarantee, Wometco PR did not assume or had no rights under the Wometco Donas Agreement, the agreement to arbitrate that Dunkin' alleges was incorporated by reference would fail for lack of consideration.[13]

---

[12] In *Awuah,* the court acknowledged that the transferee argued that, per *Black's Law,* the obligation of the transferee to arbitrate was due only after the franchisee defaults the obligation to arbitrate. 703 F.3d at 44. However, the argument was deemed waived because it was raised for the first time at oral argument and was thus not considered. *Id.*

[13] To be certain, the arbitration agreement in the Wometco Donas Agreement does not provide for any consideration other than the bilateral agreement to arbitrate—and that bilateral nature was done away with by the Guarantee. Brown Decl. I, Ex. 2 thereto, § 19.

### 2. Wometco PR Would Be Irreparably Harmed If the Injunction is Denied

It has been held that a party who is forced to arbitrate a dispute that it did not agree to arbitrate suffers irreparable harm for which there is no adequate remedy at law. *Merrill Lynch Inv. Managers v. Optibase, Ltd.,* 337 F.3d 125, 129 (2d Cir. 2003); *Maryland Cas. Co. v. Realty Advisory Bd. on Labor Relations*, 107 F.3d 979, 984 -985 (2d Cir. 1997) (a party "would be irreparably harmed by being forced to expend time and resources arbitrating an issue that is not arbitrable, and for which any award would not be enforceable"); *see also id.* at 985 ("the time and resources [that a party] would expend in arbitration is not compensable by any monetary award").

In the absence of an order enjoining Dunkin' from asserting the claims and defenses in the arbitration proceedings, Wometco PR would be irreparably harmed by the needless expenditure of its time and resources to defend itself in arbitration proceedings when it never agreed to arbitrate. More importantly, Wometco PR would be prevented from exercising the rights and procedures available through the judicial process, including the constitutional right to jury trial and the right to seek a full judicial review of adverse adjudications.[14] Denying injunctive relief would also prevent Wometco PR from exercising its statutory right to a jury trial under Section 4 of the FAA on issues of fact regarding the question of arbitrability.

### 3. The Balance of the Equities Favors Wometco PR

While denial of the requested injunctive relief would irreparably harm Wometco PR, there is no risk that Dunkin' would suffer damages or monetary loss if the injunctive relief is granted, as Dunkin' would continue to enjoy the same legal rights it currently enjoys and would

---

[14] The extent of the judicial review of arbitration awards is severely limited by Sections 10 and 11 of the FAA. For instance, an arbitrator's errors of law are absolutely final and cannot be questioned before a court of law. *Hall Street Associates, L.L.C. v. Mattel, Inc.*, 552 U.S. 576 (2008). Thus, an arbitration does away with not only the right to have a court of law decide the issues of law, but also the right to appeal legal errors.

remain free to seek remedies in a court of law, if it so wished. Indeed, some courts have held that "the balance of hardships weighs in favor of a movant who has demonstrated that it would be irreparably harmed if forced to expend time and resources arbitrating an issue that is not subject to arbitration." *Barrack, Rodos & Bacine v. Ballon Stoll Bader & Nadler, P.C*., 2008 WL 759353, *9 (S.D.N.Y. Mar. 20, 2008). In *Tellium, Inc. v. Corning Inc.,* 2004 WL 307238, *8 (S.D.N.Y. Feb. 13, 2004)*, for example, the defendant requested that the court enjoin an arbitration, claiming it was not a party to the arbitration agreement at issue. The court granted the injunctive relief, explaining that, as in this case, "a preliminary injunction will simply maintain the status quo until this Court decides the underlying issues." *Id.* at *8. The court further noted that "if [it] were to deny the preliminary injunction motion, [the movant] would be forced to expend its time and resources to defend itself in an Arbitration to which it may ultimately be determined not to have been a proper party, and any award would accordingly be unenforceable. Thus, we find that the balance of hardships tips decidedly in [movant's] favor." *Id*. Here, the Court should likewise find that "the balance of the hardships tips decidedly in [Wometco PR's] favor." *Id.*

### 4. The Effect on the Public Interest

First Circuit precedent recognizes the fundamental public policy behind Law 75 to prevent conduct such as the one that that Dunkin' has perpetrated against Wometco PR. *Waterproofing Sys., Inc. v. Hydro-Stop, Inc.,* 440 F.3d 24, 33 (1st Cir. 2006). Wometco PR suspects that the reason why Dunkin' is insisting on the arbitration is precisely to avoid the application of Law 75 to its disputes with Wometco PR. And, as suggested above, if the arbitrator fails to apply Law 75, Wometco PR would have absolutely no recourse or remedy against such error of law. Forcing Wometco PR to arbitrate issues —*when it never agree to*

*arbitrate*— would result in the evisceration of this fundamental policy. To be certain, no countervailing public interest would be adversely affected if this motion is granted.

## C.  The Court Should Not Require Security

This Motion ultimately deals with the issue of the proper forum to resolve the disputes between Wometco PR and Dunkin' and not a claim for damages. As such, and because there is no risk of a monetary loss or damages to Dunkin' while the injunction endures, there is no need to require the posting of security. *Maryland Cas. Co. v. Realty Advisory Bd. on Labor Relations,* 107 F.3d 979, 985 (2d Cir. 1997) (finding that district court did not abuse its discretion in issuing the injunction without requiring the posting of security, explaining that "[s]hould the [enjoined party] ultimately prevail, the dispute would go to arbitration and, were the arbitrator to rule in its favor, the present injunction does not prevent the [enjoined party] from fully recovering any monetary award it may be entitled to").

## III. CONCLUSION AND PRAYER

In light of the above, Wometco PR respectfully requests that the Court grant the present motion and therefore issue an order enjoining Defendants Donuts Franchised Restaurants LLC and DD IP Holder, LLC from arbitrating against Wometco PR. Wometco PR further requests that, pursuant to Section 4 of the FAA, the Court refer the question of arbitrability to a jury, after the parties have the opportunity to conduct discovery.

Respectfully submitted,

HOLLAND & KNIGHT LLP

s/Jesus E. Cuza
JESUS E. CUZA
USDC-PR #206509
jesus.cuza@hklaw.com
s/Monica Vila
Admitted *Pro Hac Vice*
monica.vila@hklaw.com
701 Brickell Avenue, Suite 3000

Miami, Florida 33131
Tel.: (305) 789-7513
Fax: (305) 789-7799

I hereby certify that, on this date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which I understand will send electronic notification of such filing to the following: Carlos A. Valldejuly-Sastre, Barbara Sabat-Lafontaine, Iris Figueroa-Rosario and David E. Worthen.

s/Monica Vila

17